[Cite as *State ex rel. Dodson v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-2552.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Ricardo Dodson, | : | |
| Relator, | : | No. 21AP-448 |
| v. | : | (REGULAR CALENDAR) |
| Ohio Department of Rehabilitation and Correction & Ohio Parole Board et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on July 26, 2022

**On brief**: *Ricardo Dodson*, pro se.

**On brief**: *Dave Yost,* Attorney General, and *D. Chad McKitrick* for respondents.

IN PROHIBITION AND MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶1}    Relator, Ricardo Dodson, an inmate of the Belmont Correctional Institution ("BCI"), filed this original action seeking a writ of prohibition and a writ of mandamus against respondents, Ohio Department of Rehabilitation and Correction ("ODRC"), the Ohio Adult Parole Authority ("OAPA"), and the Franklin County Child Support Enforcement Agency ("FCCSEA").  Regarding his request for a writ of prohibition, relator seeks an order finding that ODRC and OAPA lacked jurisdiction to adjudicate paternity at his parole hearings and prohibiting ODRC and OAPA from enforcing its paternity adjudication during past, present, and future parole-determination hearings.  Regarding his request for a writ of mandamus, relator seeks an order directing ODRC, OAPA, and

FCCSEA to order a DNA test to determine paternity; appointing counsel to represent him in any administrative parole hearing; and directing FCCSEA to provide complete and unredacted copies of records regarding the determination of parentage in an administrative paternity action filed in 1992. ODRC, OAPA, and FCCSEA have filed motions to dismiss. Relator has also filed a November 18, 2021, motion to exclude matters of fact and arguments not contained in the complaint; a December 7, 2021, motion to strike and for sanctions; and a December 7, 2021, motion to dismiss respondents' motions to dismiss.

{¶2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate has issued the appended decision, including findings of fact and conclusions of law, and has recommended this court grant the motions to dismiss filed by ODRC, OAPA, and FCCSEA. Relator filed objections to the magistrate's decision on April 1, 2022. On May 3, 2022 relator filed additional objections out of rule without seeking leave and further requested that this court strike respondents' response to relator's initial and properly filed objections. After respondents filed a response to relator's May 3, 2022 filing on May 16, 2022, on June 1, 2022 relator filed yet another response out of rule without seeking leave. The court finds that both relator's May 3, 2022 filing and his June 1, 2022 filing were filed out of rule without leave, are not properly before this court and will not be considered, and we hereby order them stricken from the record.

{¶3} Because relator has filed objections, we must independently review the record and the magistrate's decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). Relator has not filed objections to the magistrate's findings of fact.[1] Having reviewed the record and the magistrate's decision pertaining to same and finding no error on the part of the magistrate in his determinations of the facts, we hereby adopt the magistrate's findings of fact in their entirety as our own.

{¶4} Turning to the magistrate's conclusions of law and relator's objections to them, we begin by observing that in order to obtain a writ of mandamus, relator is required

---

[1] Although relator asserts in his objections "[t]he Magistrate falsely states, 'Relator claim that the OPB has exercised judicial or quasi-judicial powers in making **observations regarding paternity**, This is an inaccurate citation to the complaint, and this statement of fact and argument is not contained in the complaint" (sic passim), the foregoing statement is nowhere included in the magistrate's findings of fact.

to demonstrate that: (1) he has a clear legal right to the relief prayed for, (2) respondents are under a clear legal duty to perform the act requested, and (3) relator has no plain and adequate remedy in the ordinary course of law. *State ex rel. Thompson v. Ohio Adult Parole Auth.*, 10th Dist. No. 10AP-24, 2011-Ohio-429, ¶ 23, citing *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28, 29 (1983).

{¶5} In order to obtain a writ of prohibition, a relator must establish that: (1) the respondent has exercised or is about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denying the writ will cause injury for which no other adequate remedy in the ordinary course of the law exists. *State ex rel. Roush v. Montgomery*, 156 Ohio St.3d 351, 2019-Ohio-932, ¶ 5. A writ of prohibition is an extraordinary judicial writ issuing out of a court of superior jurisdiction and directed to an inferior tribunal commanding it to cease abusing or usurping judicial functions. *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 73 (1998). Thus, the purpose of a writ of prohibition is to restrain inferior courts and tribunals from exceeding their jurisdiction. *Roush* at ¶ 5, citing *Tubbs Jones* at 73. Relevant to this matter, we note that the "act of holding a hearing to decide whether one convicted of a crime shall be held in confinement or granted parole constitutes an exercise of judicial or quasi-judicial power." *State ex rel. McKee v. Cooper*, 40 Ohio St.2d 65, 68 (1974).

{¶6} With regard to respondents' motion to dismiss relator's request for a writ of mandamus, the magistrate found that, even construing all of the allegations in relator's complaint as true, relator failed to establish that FCCSEA had a clear legal duty under either R.C. 3125.15, 3125.16, or Ohio Adm.Code 5101:12-1-20.1 to provide him a complete and unredacted copy of the records pertaining to the 1992 administrative paternity action; that relator failed to establish that, ODRC, OAPA, and FCCSEA have a clear legal duty under either R.C. 3111.09(A)(1), 3111.10(C), and/or *Anderson v. Jacobs*, 68 Ohio St.2d 67 (1981) to order a DNA blood test to establish paternity to be used at his next parole hearing; and that relator failed to establish that respondents had a clear legal duty under either R.C. 2151.352, 2151.23, and/or *State ex rel. Cody v. Toner*, 8 Ohio St.3d 22 (1983) to appoint legal counsel to represent relator at parole hearings at which his parentage is considered.

{¶7}    With regard to respondents' motion to dismiss relator's request for a writ of prohibition, the magistrate found that relator could prove no set of facts entitling him to a writ of prohibition because, contrary to relator's assertions, ODRC and OAPA have not previously exercised and/or are not about to exercise judicial or quasi-judicial power at his next parole hearing by making a paternity determination in contravention of R.C. 2151.23(B)(2) or R.C. 3111.01.  Instead, the magistrate determined that ODRC and OAPA properly considered relator's status as A.M.'s father, consistent with the victim's statement, for the purpose of determining parole as is authorized by Ohio Adm.Code 5120:1-1-11 (procedure of release consideration hearing) and 5120:1-1-14 (victim conference).  In other words, ODRC and OAPA did not establish any legal relationship with the ramifications of imposing or conferring any parental rights, privileges, duties, and obligations as set forth in R.C. 3111.01(A) and did not adjudicate the paternity of the child born to the victim under R.C. 2151.23(B)(2).

{¶8}    In his objections, relator presents no new issues and merely rehashes the same arguments presented to the magistrate.  Furthermore, although relator delineates at least ten separate objections, in essence, all boil down to the following two arguments: (1) respondents improperly adjudicated and made the determination that relator is the natural biological father of the child born to the victim and denied parole based on that adjudication; and (2) relator has a clear legal right to take a DNA blood test to determine whether he is the natural biological father of the minor child prior to the next parole hearing and relator is entitled to the appointment of counsel to represent him at said hearing.[2]  We disagree on both counts.  Regarding the first argument, relator has not identified any Ohio law that prohibits ODRC and OAPA from considering the statement of the victim regarding the paternity of her child.  Furthermore, relator has not identified any legal authority that supports relator's theory that ODRC and OAPA somehow legally established and/or determined paternity of the child born to the victim.  And finally, relator has not identified any legal authority that supports relator's theory that ODRC and OAPA's consideration of the victim's statement fell within the parameters of R.C. 2151.23(B)(2) and R.C. 3111.01 so as to legally establish paternity.  In short, ODRC and OAPA's consideration of the victim's

---

[2] Relator has not objected to the magistrate's finding that relator is not entitled to a copy of the records pertaining to the 1992 administrative paternity action.

statements regarding the paternity of her child as part of their decision process regarding relator's release on parole is not tantamount to legally establishing the paternity of the child born to the victim as she has stated.

{¶9}   Furthermore, relator's assertion that respondents improperly adjudicated and made the determination that relator is the natural biological father of the child born to the victim and denied parole based on that adjudication does not accurately reflect the myriad factors considered by the parole board in denying relator's application. Specifically, in addition to respondents' consideration of the victim's statements regarding the paternity of her child, the parole board also considered that relator was convicted of raping two different women on two separate occasions; that one of the victims was kidnapped prior to being raped and was also threatened with being killed by being pushed out of a second story window; that the victim who became pregnant due to the rape was mentally challenged; and that relator had also been convicted of prior crimes for forgery, disorderly conduct and an assault that apparently was an incident of domestic violence. (*See* Compl., Ex. C-2; C-3; D; D-1; D-2; D-3; D-5; E; and E-1.) Indeed, in the July 12, 2018 Ohio Parole Board Decision and Minutes, the rationale provided for denial of release included that relator's "case is aggravated by the case-specific factors of violence, brutality, multiple occurrences, multiple victims, and extensive victimization." In short, paternity of the child born to one of the rape victims was only one of multiple factors considered by respondents and was in no way dispositive of respondents' decision in any event.

{¶10}  Next, regarding relator's second argument presented via his objections, relator has not identified any legal authority that requires ODRC and OAPA to initiate a DNA blood test to establish or refute the paternity of the child born to the victim. There is a reason for this omission: there is no such authority. Indeed, relator himself cites to the proper legal methods in which to establish paternity that relator must undertake if that is truly the relief he seeks, and none of them involves any clear legal duties on the part of respondents.

{¶11}  Therefore, after an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objections, we find the magistrate rightly recommends granting respondents' motions to dismiss for the

reasons cogently articulated by the magistrate in his decision. Therefore, we find relator's objections are without merit and they are hereby overruled.

{¶12} Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law therein. In accordance with the magistrate's decision, respondents' motions to dismiss are granted; relator's motion to exclude matters of fact and arguments not contained in the complaint, motion to strike and for sanctions, and motion to dismiss respondents' motions to dismiss are denied; and this action is hereby dismissed.

*Objections overruled; action dismissed.*

MENTEL and McGRATH, JJ., concur.

_____

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Ricardo Dodson, | : | |
| Relator, | : | |
| v. | : | No. 21AP-448 |
| Ohio Department of Rehabilitation and Correction & Ohio Parole Board et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on March 3, 2022

*Ricardo Dodson,* pro se.

*Dave Yost,* Attorney General, *William Case,* and *Kelly N. Brogan,* for respondents.

IN PROHIBITION AND MANDAMUS ON
RESPONDENTS' MOTIONS TO DISMISS

{¶13} Relator, Ricardo Dodson, has filed this original action seeking a writ of prohibition and, alternatively, a writ of mandamus against respondents, Ohio Department of Rehabilitation and Correction ("ODRC"), the Ohio Adult Parole Authority ("OAPA"), and the Franklin County Child Support Enforcement Agency ("FCCSEA"). With regard to the request for a writ of prohibition, relator seeks an order finding that ODRC and OAPA lacked jurisdiction to adjudicate paternity at his parole hearings and prohibiting ODRC and OAPA from enforcing its paternity adjudication during past, present, and future parole-

determination hearings. With regard to the request for a writ of mandamus, relator seeks an order directing ODRC, OAPA, and FCCSEA to order a DNA test to determine paternity, appoint him counsel for any administrative parole hearing, and an order directing FCCSEA to provide complete and unredacted copies of records regarding the determination of parentage in an administrative paternity action filed in 1992. ODRC, OAPA, and FCCSEA have filed motions to dismiss. Relator has also filed a November 18, 2021, motion to exclude matters of fact and arguments not contained in the complaint; a December 7, 2021, motion to strike and for sanctions; and a December 7, 2021, motion to dismiss respondents' motions to dismiss.

Findings of Fact:

{¶14}   1. Respondent ODRC is a governmental agency responsible for, among other things, operating the Ohio prison system.

{¶15}   2. Respondent OAPA is a governmental agency responsible for, among other things, the release of criminal offenders from prison.

{¶16}   3. Respondent FCCSEA is a governmental agency responsible for, among other things, providing child-support services and establishing parentage.

{¶17}   4. Relator is a prisoner incarcerated at Belmont Correctional Institution.

{¶18}   5. In 1991, relator was convicted of rape, kidnapping, and attempted rape. Appellant was sentenced to a term of imprisonment. The victim gave birth to a daughter, A.M., after the crimes occurred, and A.M.'s mother subsequently relinquished her parental rights and placed A.M. for adoption.

{¶19}   6. According to relator's complaint, in 1992, FCCSEA filed an administrative paternity action and then a paternity action in the Franklin County Court of Common Pleas. Three possible fathers were named in the court action, but it was dismissed in 1993 for failure to prosecute.

{¶20}   7. According to relator's complaint, relator was denied parole eight times from 2000-21. In parole hearings in 2009, 2012, 2015, and 2018, the OAPA, using statements made by A.M.'s mother and her husband at a victim's conference, indicated that A.M. was born as a result of the rape, relator is the biological father of A.M., and relator was

the cause of the victim relinquishing her parental rights to A.M. Relator has denied that he is A.M.'s biological father. Relator indicates his next parole hearing will be in 2024.

{¶21}  8. According to relator's complaint, in August 2018, relator filed an action in federal court, claiming that the victim's paternity allegation used to deny him parole was false. In February 2021, a federal magistrate concluded that the statement made by A.M.'s mother and her husband at the victim conference was sufficient to support the conclusion that relator was A.M.'s biological father, relator could not support his claim that he is not her biological father without DNA evidence, and a letter sent to relator from the victim in March 2018 indicated that relator impregnated her, she gave birth to A.M., and the child was placed for adoption. In July 2021, a federal judge affirmed the magistrate's report and recommendation and granted the parole board summary judgment. Relator appealed.

{¶22}  9. According to relator's complaint, in July 2021, he was denied parole again, and at the hearing, he denied being A.M.'s biological father.

{¶23}  10. According to relator's complaint, in August 2021, relator served upon FCCSEA via certified mail a request for a copy of the documents from the administrative paternity action, seeking unredacted records regarding the determination of the existence or nonexistence of a parent-child relationship between the putative fathers and A.M., but FCCSEA failed to comply with the request.

{¶24}  11. On September 10, 2021, relator filed his complaint in prohibition and mandamus with this court.

{¶25}  12. On October 12, 2021, FCCSEA filed a motion to dismiss, pursuant to Civ.R. 12(B)(6).

{¶26}  13. On October 25, 2021, ODRC and OAPA filed a motion to dismiss, pursuant to Civ.R. 12(B)(6).

{¶27}  14.On November 18, 2021, relator filed a motion to exclude matters of fact and arguments not contained in the complaint.

{¶28}  15. On December 7, 2021, relator filed a motion to strike and for sanctions, and a motion to dismiss respondents' motions to dismiss.

Conclusions of Law:

{¶29} For the reasons that follow, it is this magistrate's decision that this court should grant respondents' motions to dismiss relator's complaint for writs of prohibition and mandamus.

{¶30} A court may dismiss a complaint seeking a writ of prohibition or writ of mandamus pursuant to Civ.R. 12(B)(6) if, after all factual allegations in the complaint are presumed true and all reasonable inferences are made in relator's favor, it appears beyond doubt that relator could prove no set of facts entitling him or her to the requested extraordinary writ. State ex rel. Turner v. Houk, 112 Ohio St.3d 561, 2007-Ohio-814, ¶ 5. "Although factual allegations in the complaint are taken as true, 'unsupported conclusions of a complaint are not considered admitted * * * and are not sufficient to withstand a motion to dismiss.' " Justice v. Jefferson-Pilot Life Ins., 10th Dist. No. 98AP-177 (Dec. 24, 1998), quoting State ex rel. Hickman v. Capots, 45 Ohio St.3d 324 (1989).

{¶31} The Supreme Court of Ohio has set forth three requirements that must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle, 6 Ohio St.3d 28 (1983).

{¶32} "The purpose of a writ of prohibition is to restrain inferior courts from exceeding their jurisdiction." *State ex rel. Roush v. Montgomery*, 156 Ohio St.3d 351, 2019-Ohio-932, ¶ 5, citing *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 73, (1998). To demonstrate entitlement to a writ of prohibition, a relator must establish that a respondent: (1) has exercised or is about to exercise judicial or quasi-judicial power, (2) that the exercise of that power is unauthorized by law, and (3) that denying the writ will cause injury for which no other adequate remedy in the ordinary course of the law exists. *Roush* at ¶ 5. *See State ex rel. McKee v. Cooper*, 40 Ohio St.2d 65, 68 (1974) (stating that the "act of holding a hearing to decide whether one convicted of a crime shall be held in confinement or granted parole constitutes an exercise of judicial or quasi-judicial power").

{¶33} "Where an inferior court patently and unambiguously lacks jurisdiction over the cause, prohibition will lie both to prevent the future unauthorized exercise of jurisdiction and to correct the results of previous jurisdictionally unauthorized actions." *State ex rel. Litty v. Leskovyansky*, 77 Ohio St.3d 97, 98 (1996). Accord *State ex rel. Sartini*

*v. Yost*, 96 Ohio St.3d 37, 2002-Ohio-3317, ¶ 24 (concluding the fact the judge had already exercised judicial power by granting a motion, such did not preclude the opposing party from obtaining a writ of prohibition, as prohibition will lie to correct the results of previous jurisdictionally unauthorized actions).

{¶34} The magistrate may take judicial notice of the pleadings and orders in related cases when these are not subject to reasonable dispute, at least insofar as they affect the present original action. *State ex rel. Nyamusevya v. Hawkins*, 10th Dist. No. 19AP-199, 2020-Ohio-2690, ¶ 33, citing Evid.R. 201(B); *State ex rel. Ohio Republican Party v. Fitzgerald*, 145 Ohio St.3d 92, 2015-Ohio-5056, ¶ 18; and *State ex rel. Womack v. Marsh*, 128 Ohio St.3d 303, 2011-Ohio-229, ¶ 8. Furthermore, a court may take judicial notice of pleadings that are readily accessible on the internet. *See Draughon v. Jenkins*, 4th Dist. No. 16CA3528, 2016-Ohio-5364, ¶ 26, citing *State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, ¶ 8, 10 (a court may take judicial notice of appropriate matters, including judicial opinions and public records accessible from the internet, in determining a Civ.R. 12(B)(6) motion); and *Giannelli*, 1 Baldwin's Ohio Practice Evidence, Section 201.6 (3d Ed.2015) (noting that the rule generally precluding a court from taking judicial notice of other cases has been relaxed if the record is accessible on the internet). In addition, courts may take judicial notice of appropriate matters in determining a Civ.R. 12(B)(6) motion without converting it to a motion for summary judgment. *State ex rel. Findlay Publishing Co. v. Schroeder*, 76 Ohio St.3d 580-81 (1996); *Draughon* at ¶ 26 (a court may take judicial notice of appropriate matters, including judicial opinions and public records accessible from the internet, in determining a Civ.R. 12(B)(6) motion without converting it to a motion for summary judgment).

{¶35} In the present matter, relator first requests a writ of mandamus against FCCSEA, seeking complete and unredacted records in FCCSEA's possession relating to the existence or non-existence of a parent-child relationship between A.M. and the putative fathers. Relator claims he has a clear legal right to obtain, and FCCSEA has a clear legal duty to produce, the complete and unredacted records pursuant to R.C. 3125.15, 3125.16, and Ohio Adm.Code 5101:12-1-20.1, and there is no other adequate remedy at law.

{¶36} However, even after all factual allegations in relator's complaint are presumed true and all reasonable inferences are made in relator's favor, it is beyond doubt

that relator could prove no set of facts entitling him to a writ of mandamus on this basis. R.C. 3125.15 provides that "[a] child support enforcement agency shall maintain records of support orders being administered or otherwise handled by the agency pursuant to sections 3121.81 to 3121.86 of the Revised Code." R.C. 3125.16 provides:

> Each obligor and each obligee under a support order may review all records maintained under section 3125.15 of the Revised Code that pertain to the support order and any other information maintained by the child support enforcement agency, except to the extent prohibited by state or federal law.

{¶37} Here, with regard to R.C. 3125.15 and 3215.16, relator has not alleged that he is an obligor or oblige under a support order. Therefore, these provisions are inapplicable to relator's request and place no legal duty upon FCCSEA to produce records relating to the existence of nonexistence of a parent-child relationship between A.M. and any putative fathers.

{¶38} As for Ohio Adm.Code 5101:12-1-20.1, that provision provides the circumstances under which a child support enforcement agency ("CSEA") may release information contained in a person's case record pursuant to a request. Relator does not specify which subsections of this rule he believes apply to his request. The provision contains three subsections, (A), (B), and (C), and includes circumstances under which certain information in the record is subject to limitations on its disclosure, subject to redaction, or completely prohibited from disclosure. Under subsection (A), a CSEA is permitted to only disclose information contained in a person's case record upon the request of an individual when, among other things, the disclosure is in accordance with written permission from the person. Subsection (B) applies to requests from certain entities, none of which apply to relator's request. Subsection (C) contains several circumstances under which the disclosure of information is limited, redaction of information is required, and disclosure of information is completely prohibited. Relator points to no provision in 5101:12-1-20.1 that would require FCCSEA to produce for relator a complete and unredacted copy of the records from the administrative paternity action. Therefore, even construing all of the allegations in relator's complaint as true, relator has failed to establish that CSEA was under a clear legal duty to provide him a complete and unredacted copy of the records pertaining to the administrative paternity action.

{¶39} Relator next requests a writ of mandamus against FCCSEA, ODRC, and OAPA, seeking an order for a DNA test to be used at his next parole hearing and the appointment of counsel at his next parole hearing that adjudicates his parentage. With regard to the DNA test, relator claims he has a clear legal right to, and respondents have a clear legal duty to grant, a blood test to establish the existence or non-existence of paternity pursuant to R.C. 3111.09(A)(1), 3111.10(C), and *Anderson v. Jacobs*, 68 Ohio St.2d 67 (1981). However, relator cannot show that FCCSEA, ODRC, or OAPA have a clear legal duty to order a DNA blood test to establish paternity to be used at his next parole hearing. R.C. 3111.09(A)(1) provides, in pertinent part:

> (1) In any action instituted under sections 3111.01 to 3111.18 of the Revised Code, the court, upon its own motion, may order and, upon the motion of any party to the action, shall order the child's mother, the child, the alleged father, and any other person who is a defendant in the action to submit to genetic tests.

{¶40} This provision is very specific and is not applicable here. In the present matter, relator has not alleged that, in an action instituted under R.C. 3119.01 to 3111.18, a court or any party to such an action has moved for an order seeking a genetic test. Under R.C. 3111.09(A), it is the court that has a legal duty to order a party to submit to genetic tests. Relator cannot show that any of the respondents in this action has a clear legal duty under R.C. 3111.09(A)(1) to provide relator a DNA test to be used at his next parole hearing. Furthermore, R.C. 3111.10(C) only establishes the type of evidence that may be used to determine paternity in an action instituted under R.C. 3111.01 to 3111.18 and does not establish any duty on behalf of respondents here to order a genetic test for use at his parole hearings. *Anderson* is also not helpful to relator. *Anderson* involved the denial of blood tests to an indigent paternity defendant in parentage proceedings before a court pursuant to R.C. 3111.01, and does not in any way place a legal duty upon the respondents here to order DNA testing for use in relator's parole hearings. Thus, relator's complaint fails to establish that respondents are under a clear legal duty to perform the act requested, and respondents are entitled to dismissal of the complaint, in this respect.

{¶41} With regard to appointment of legal counsel, relator argues that he has a clear legal right to, and respondents have a clear legal duty to appoint, legal counsel at any

administrative paternity determination proceedings pursuant to R.C. 2151.352, 2151.23, and *State ex rel. Cody v. Toner*, 8 Ohio St.3d 22. However, neither the statutes nor *Cody* apply here to establish a duty upon respondents to provide legal counsel to relator at parole hearings at which his parentage is considered. R.C. 2151.352 entitles a child, the child's parents or custodian, or any other person in loco parentis of the child to representation by legal counsel, including appointed counsel for indigent parties, at all stages of the proceedings under R.C. Chapter 2151 (juvenile court) or Chapter 2152 (delinquency; juvenile traffic offenders) and is inapplicable to parole hearings. R.C. 2151.23 outlines the jurisdiction of juvenile courts. *Cody* concerned the unconstitutional denial of court-appointed counsel for an indigent defendant in a paternity action in the common pleas court, when the complainant-mother and her child were recipients of public assistance and the defendant was facing the state as an adversary. Those circumstances do not apply here and place no duty upon respondents to appoint counsel for an indigent inmate in parole hearings when parentage is considered. Thus, relator cannot show that respondents are under a clear legal duty to perform the act requested, and respondents are entitled to dismissal of relator's writ of mandamus, in this respect.

{¶42} Finally, relator requests a writ of prohibition against ODRC and OAPA, arguing he is entitled to a writ for the following reasons: (1) ODRC and OAPA have previously exercised and/or are about to exercise judicial or quasi-judicial power during his next parole hearing by making a paternity determination; (2) the exercise of judicial or quasi-judicial power adjudicating paternity matters is unauthorized by law pursuant to R.C. 2151.23(B)(2); and (3) the denial of the writ will cause injury for which no other adequate remedy in the ordinary course of law exists.

{¶43} Relator can prove no facts entitling him to a writ of prohibition. It is true that R.C. 2151.23(B)(2) provides that "the juvenile court has original jurisdiction under the Revised Code * * * to determine the paternity of any child alleged to have been born out of wedlock pursuant to sections 3111.01 to 3111.18 of the Revised Code." However, R.C. 3111.01 defines the scope of sections 3111.01 to 3111.18 and provides, in pertinent part:

> (A) As used in sections 3111.01 to 3111.85 of the Revised Code, "parent and child relationship" means the legal relationship that exists between a child and the child's natural or adoptive parents and upon which those sections and any other

> provision of the Revised Code confer or impose rights, privileges, duties, and obligations. The "parent and child relationship" includes the mother and child relationship and the father and child relationship.

{¶44} Clearly, ODRC and OAPA's use of the victim's statement that relator was the father of A.M. does not fit within the parameters of R.C. 3151.23(B)(2) or 3111.01. R.C. 3111.01 specifically describes the nature of a paternity determination by a juvenile court and indicates that the parent and child relationship that is established by a juvenile court is a legal relationship that confers or imposes rights, privileges, duties, and obligations. This is not the same type of determination ODRC and OAPA made in relator's parole hearings. ODRC and OAPA's consideration of relator's status as A.M.'s father, consistent with the victim's statement, did not establish any legal relationship with the ramifications of imposing or conferring any parental rights, privileges, duties, and obligations. ODRC and OAPA considered relator's status as A.M.'s father for the purpose of determining parole. Relator cannot show that ODRC and OAPA exceeded their jurisdiction by considering relator's paternity or exercised quasi-judicial power reserved for juvenile courts by considering such in making their parole determination. There is no evidence that ODRC or OAPA's determination had any impact on any rights, privileges, duties, or obligations relating to the parent-child relationship between relator and A.M., and there is no evidence that the victim used ODRC and OAPA's considerations regarding paternity as evidence to seek child support or pursue parentage proceedings. To the contrary, ODRC and OAPA are vested with the power to make parole determinations and, specifically, to consider victim statements pursuant to Ohio Adm.Code 5120:1-1-11 (procedure of release consideration hearing) and 5120:1-1-14 (victim conference). Therefore, relator cannot show that ODRC and OAPA exceeded their jurisdiction or have exercised or are about to exercise judicial or quasi-judicial power, the type of which is unauthorized by law or akin to that exercised by a juvenile court when making a determination regarding the parent and child relationship.

{¶45} Accordingly, the magistrate recommends that this court grant respondents' motions to dismiss relator's complaint for writs of prohibition and mandamus. The magistrate further recommends that this court deny relator's motion to exclude matters of

fact and arguments not contained in the complaint, motion to strike and for sanctions, and motion to dismiss respondents' motion to dismiss, as all are without merit.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).