[Cite as *State v. Ulm*, 2022-Ohio-4741.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29168 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-433 |
| | : | |
| TYLER ULM | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of December, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JOHNNA M. SHIA, Atty. Reg. No. 0067685, P.O. Box 145, Springfield, Ohio 45066
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Tyler Ulm appeals from his convictions for rape and gross sexual imposition following his guilty pleas. For the reasons set forth below, we affirm the trial court's judgment in part, reverse in part, and remand. The reversal relates only to the trial court's improper imposition of post-release control for four counts of rape which required imposition of life sentences, and, if Ulm is released from prison, life-time parole supervision.

## I.     Facts and Procedural History

{¶ 2} In February 2020, Ulm was indicted on two counts of rape (under age 10/force) in violation of R.C. 2907.02(A)(1)(b), two counts of rape (under age 10) in violation of R.C. 2907.02(A)(1)(b), and two counts of gross sexual imposition (under age 13) in violation of R.C. 2907.05(A)(4). The record indicates that Ulm victimized two children, one of whom was three years old at the time of the offenses.

{¶ 3} Following negotiations, the State and Ulm reached an agreement whereby Ulm agreed to plead guilty as charged in exchange for an agreed-upon sentence. On March 17, 2020, the trial court conducted a plea hearing immediately followed by a sentencing hearing. On that date, Ulm signed plea and waiver forms for the indicted charges. He also signed two forms which set forth an explanation of his duties to register as a Tier II and Tier III sex offender or child victim offender. At the outset of the plea hearing, defense counsel noted that Ulm was present to "do the plea, the sex offender designation, waive the PSI, and have him sentenced." Tr. p 4. Defense counsel also

affirmed that Ulm had executed the offender registration notification forms. Tr. p. 5. The only other mention of the offender registration requirements during the plea colloquy occurred when the trial court asked Ulm, "[and] you understand that you're going to be given a registration requirement?" Tr. p. 6. Ulm answered in the affirmative.

{¶ 4} The matter proceeded into the sentencing portion of the hearing, during which the following colloquy occurred:

THE COURT: Mr. Ulm, have you and your lawyer gone over these explanation of duties to register as a sex offender?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. And you understand that for the gross sexual imposition, that that duty is imposed for 25 years. So should you ever be released from prison, you need to - - and I don't know what the requirements are when you are in prison, but I'm sure they're probably explained somewhere on here. But anyway, wherever you work, live, or go to school, in each - - if they are in different counties, then in each of those counties you need to register with the sheriff in that county; do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And this will be the same with - - and that's for 25 years on that. And then on the other felonies of the first degree, that's tier 3, so you need to - - well, what I failed to mention to you is you need to walk in or it needs to be in person when you register for the felonies 3 every 180 days. And on the tier 3, you need to register in person every 90 days for the rest

of your life; do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: All right. At this time, we'll ask the court's bailiff to serve the Defendant here in open court with a copy of each of these registration requirements.

Tr. p. 19-20.

{¶ 5} Thereafter, as agreed to by the parties, the court imposed a sentence of 25 years to life in prison for each of the convictions for forcible rape of a child under age 10. The two sentences were ordered to run consecutively to each other and concurrently with the other sentences. The trial court also imposed sentences of 15 years to life for each of other rapes and five-year for each of the gross sexual impositions, to be run concurrently with all other sentences. In all, the trial court imposed an aggregate sentence of 50 years to life to be served concurrently with a 60-year sentence previously imposed in federal court. Ulm was designated a Tier II sex offender for the gross sexual imposition offenses and as a Tier III sex offender for the rape offenses.

{¶ 6} Ulm appeals.

### I. Knowing, Intelligent, and Voluntary Nature of Ulm's Plea

{¶ 7} Ulm's first assigned error is as follows:

THE TRIAL COURT FAILED TO COMPLY WITH CRIM.R. 11 AND THEREFORE, ULM'S PLEA WAS NOT VOLUNTARILY, KNOWINGLY, NOR INTELLIGENTLY ENTERED.

{¶ 8} Ulm asserts that the trial court "completely failed" to comply with Crim.R. 11 when it failed to personally address him with respect to his sex offender designation and registration requirements prior to accepting his pleas. He also argues that he was not notified of his designation and registration requirements until he was sentenced. Although Ulm acknowledges that the information was contained in the plea form and that he signed the offender notification forms at the time of his plea, he contends that these signed forms were not substitutes for the trial court's obligation to personally address him concerning these requirements prior to accepting his pleas and did not constitute "substantial compliance" with Crim.R. 11. Instead, he argues that the trial court completely failed to comply with the rule, which requires that the plea be vacated.

{¶ 9} This court has stated:

Due process requires that a defendant's guilty plea be knowing, intelligent, and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *see also State v. Inskeep*, 2d Dist. Champaign No. 2016-CA-2, 2016-Ohio-7098, ¶ 12. A trial court's compliance with Crim.R. 11(C) ensures that a plea comports with due process. *State v. McElroy,* 2d Dist. Montgomery No. 28974, 2021-Ohio-4026, ¶ 14; *State v. Russell*, 2d Dist. Clark No. 10-CA-54, 2011-Ohio-1738, ¶ 6.

Crim.R. 11(C)(2)(c) requires the trial court to inform the defendant of the constitutional rights he is waiving by entering a plea. These rights are the right to a jury trial, the right to confront witnesses, the right to compulsory process, the right against self-incrimination, and the right to require the

State to establish guilt beyond a reasonable doubt. Since constitutional rights are involved, strict compliance with this portion of the rule is required. *State v. Jones*, 2d Dist. Greene No. 2020-CA-12, 2020-Ohio-4767, ¶ 10, citing *State v. Thompson*, 2d Dist. Montgomery No. 28308, 2020-Ohio-211, ¶ 5. A failure of strict compliance requires a finding that the plea is not consistent with due process; prejudice, under this circumstance, is presumed, and the plea must be invalidated. *Id.,* citing *State v. Miller*, 159 Ohio St.3d 447, 2020-Ohio-1420, 151 N.E.3d 617, ¶ 16, *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 31-32.

Crim.R. 11(C)(2)(a) requires the trial court to determine that the plea is being made voluntarily, that the defendant understands the nature of the charge, the maximum penalty involved, and, if applicable, that the defendant is not eligible to be sentenced to a term of community control sanctions. Crim.R. 11(C)(2)(b) requires the trial court to determine that the defendant understands the effect of the plea and that the trial court, upon acceptance of the plea, may proceed to sentencing. Since Crim.R. 11(C)(2)(a) and (b) do not implicate constitutional rights, a trial court's partial compliance with these portions of the rule, as opposed to strict compliance, does not necessarily require that the plea be vacated. Instead, the defendant must establish that the failure of strict compliance has caused prejudice. *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 16. In this context, prejudice is measured by whether the

defendant would have entered the plea if there had been full compliance with, as applicable, Crim.R. 11(C)(2)(a) or (b). *Id.* at ¶ 23. But, a trial court's complete failure to comply with either Crim.R. 11(C)(2)(a) or (b) eliminates the defendant's burden to establish prejudice.

*State v. Perdue*, 2022-Ohio-722, 185 N.E.3d 683, ¶ 10-12 (2d Dist.).

{¶ 10} In *State v. Williams*, 129 Ohio St.3d 324, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 16, the Ohio Supreme Court held that the Adam Walsh Act version of R.C. Chapter 2950 is punitive, not remedial. Thus, the registration and other requirements imposed upon a sexual offender are a component of the offender's maximum penalty. *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286.

{¶ 11} We find *Dangler* to be dispositive of the issue at hand. Dangler entered a negotiated plea to one count of sexual battery. During the plea colloquy, the trial court informed him that he would be designated a Tier III sex offender and, as a result, he would have a lifetime registration requirement. Dangler was not informed of the specific registration requirements, nor was he informed of the community notification and residency restrictions imposed by a Tier III designation. A month later, the trial court conducted a sentencing hearing during which the trial court imposed an agreed upon sentence, designated Dangler a Tier III sex offender, and more fully informed him of the registration and other requirements imposed by R.C. Chapter 295. *Id.* at ¶ 3-5.

{¶ 12} On appeal, the Sixth District concluded that each R.C. Chapter 2950 requirement constitutes a separate penalty and, given this, in order to comply with Crim.R. 11(C)(2)(a)'s maximum-penalty advisement, a trial court must inform the defendant of

each registration requirement at the plea hearing. The Sixth District further concluded that the trial court's failure to advise Dangler of the specific Tier III requirements constituted a complete failure to comply with Crim.R. 11(C)(2)(a)'s maximum-penalty advisement. Based upon this conclusion, Dangler's plea was vacated. *Id.* at ¶ 6-8.

{¶ 13} The Supreme Court reversed, concluding that "[b]ecause the trial court advised Dangler that he would be subject to the registration requirements [imposed by R.C. Chapter 2950], the trial court did not completely fail to comply with Crim.R. 11(C)(2)(a)'s maximum-penalty-advisement requirement." *Id.* at ¶ 22. The Supreme Court then stated that since there was partial compliance, Dangler had to establish prejudice before the plea could be vacated. Thus, Dangler would need to "establish[ ] that he would not have pleaded no contest but for the trial court's failure to explain the sex-offender-classification scheme more thoroughly." *Id.* at ¶ 23. The Supreme Court finally noted that prejudice must be established "on the face of the record" and that the record provided no support for the conclusion that Dangler's plea decision would have changed if he had been more completely informed of "the details of the sex-offender-classification scheme." *Id.* at ¶ 24, quoting *Hayward v. Summa Health Sys./Akron City Hosp.*, 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶ 26, quoting *Wagner v. Roche Laboratories*, 85 Ohio St.3d 457, 462, 709 N.E.2d 162 (1999). As a result of these conclusions, the Sixth District's judgment was reversed, and Dangler's plea was reinstated.

{¶ 14} In Ulm's case, the transcript reveals that he had signed the sex offender notifications forms. And, during the plea hearing, the trial court asked Ulm if he

understood that he would be subject to a registration requirement; Ulm replied, "Yes sir." From this, we conclude that the trial court partially complied with the Crim.R. 11(C)(2)(a) maximum penalty notification as it related to the R.C. 2950 statutory scheme. In coming to this determination, we understand that Dangler was provided a bit more information than Ulm was provided, but this is not relevant because the issue is whether there was some compliance, not the degree of such partial compliance. Finally, Ulm does not assert, and the record on its face does not reflect, that Ulm's plea decision would have been different if he had been provided a complete explanation of the R.C. Chapter 2950 requirements.

{¶ 15} Accordingly, Ulm's first assignment of error is overruled.

## II. Post-Release Control Advisement

{¶ 16} The second assignment of error states as follows:

THE TRIAL COURT FAILED TO PROPERLY ADVISE ULM OF POST RELEASE CONTROL FOR THE OFFENSE FOR WHICH HE ENTERED A GUILTY PLEA AT THE TIME OF HIS PLEA AND THEREFORE, HIS PLEAS SHOULD BE VACATED, AND HIS SENTENCE IS INVALID.

{¶ 17} Ulm asserts that the trial court improperly informed him he would be subject a term of lifetime post-release control on the convictions for rape, and his sentence should be vacated.

{¶ 18} " 'Post-release control' involves a period of supervision by the Adult Parole

Authority after an offender's release from prison that includes one or more post-release control sanctions imposed under R.C. 2967.28." *State v. Collins*, 2d Dist. Montgomery No. 27939, 2018-Ohio-4760, ¶ 15. "Post-release control is mandatory for some offenses and is imposed at the discretion of the Parole Board for others, depending on the nature and degree of the offense." *Id.* citing R.C. 2967.28(B) and (C). "If a defendant has committed an offense subject to post-release control under R.C. 2967.28, the trial court must notify the defendant at sentencing of the post-release control requirement and the consequences if the defendant violates post-release control." (Citations omitted.) *Id.* at ¶ 16.

{¶ 19} R.C. 2967.28 provides:

(B) Each sentence to a prison term, other than a term of life imprisonment, for a felony of the first degree, for a felony of the second degree, for a felony sex offense, or for a felony of the third degree that is an offense of violence and is not a felony sex offense shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment. * * * Unless reduced by the parole board pursuant to division (D) of this section when authorized under that division, a period of post-release control required by this division for an offender shall be of one of the following periods:

(1) For a felony sex offense, five years[.]

{¶ 20} All of Ulm's convictions were for felony sex offenses, and the trial court properly imposed five years of post-release control for each of the gross sexual imposition

convictions. However, the rape offenses carried life sentences. Thus, by the plain language of R.C. 2967.28(B), the trial court could not impose a period of post-release control for the rape offenses. But the court stated that for each rape offense, Ulm would be subject to supervision "by the Parole Board for a period of LIFE Post-Release Control after [his] release from imprisonment." It is not clear from this language whether the trial court meant to merely notify Ulm that he would be subject to parole supervision upon his release or whether the trial court intended to impose a term of post-release control. Given the language used by the trial court, we must conclude that it incorrectly imposed post-release control. On remand, the court need not conduct a resentencing hearing; instead, it may simply amend the judgment entry to reflect that if Ulm is released from prison, he will be subject to life-time parole supervision. *See State v. Hibbler*, 2d Dist. Clark No. 2019-CA-19, 2019-Ohio-3689, ¶ 15.

**{¶ 21}** The second assignment of error is sustained.

### III. Merger Issue

**{¶ 22}** The third assignment of error asserted by Ulm states:

THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE ULM'S

OFFENSES IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF

THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION,

AND THEREFORE, HIS SENTENCE IS CONTRARY TO LAW.

**{¶ 23}** Ulm argues that Count II (rape of a child under the age of 10) and Count III (rape of a child under the age of 10 by force) should have merged prior to sentencing.

In support, he notes that the offenses occurred on the same date and that it "is unlikely that these offenses were committed against two different persons on the same day."

{¶ 24} The Fifth Amendment to the United States Constitution provides in relevant part that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This protection applies to the states through the Fourteenth Amendment to the United States Constitution. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Ohio Constitution, Article I, Section 10 also provides double jeopardy protection to Ohio citizens. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10. The prohibition against double jeopardy protects citizens from a second prosecution for the same offense and against multiple punishments for the same offense. *Id.*

{¶ 25} In Ohio, the multiple punishment double jeopardy protection has been codified at R.C. 2941.25:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 26} In the past, the Ohio Supreme Court has created several different tests to use when making a decision regarding merger. The most recent test is set forth in *Ruff*:

> * * * [W]hen determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three simple questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Id.* at ¶ 31.

{¶ 27} We begin by noting that Ulm did not raise the merger issue in the trial court. But "when an error in failing to merge allied offenses is obvious, it rises to plain error." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 14.

{¶ 28} Ulm admits, and the record indicates, that this case involved two minor victims. But Ulm claims that the subject offenses were most likely committed against the same victim with the same animus. We find no support in the record for this assertion. Indeed, on the record, the State expressly noted that the parties had agreed that Counts I and III were separate offenses and, importantly, that neither count would merge with any other charged offenses, which necessarily included Count II. Tr. p. 10. Ulm did not dispute this assertion. As such, the record indicates that Ulm entered guilty pleas to the offenses with the understanding that they were not allied offenses. Accordingly, the third

assignment of error is overruled.

## IV.    Ineffective Assistance of Counsel

{¶ 29} The fourth assignment of error is as follows:

ULM RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 30} Ulm claims his trial counsel's performance was deficient in numerous respects.   Specifically, he contends counsel was ineffective for failing to (1) file a motion to dismiss on speedy trial grounds; (2) raise the issue of merger; and (3) assure that the record was complete for appeal.

{¶ 31} To establish ineffective assistance of counsel, a defendant must establish deficient performance and that he was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984); *State v. Hart*man, 2d Dist. Montgomery No. 27162, 2017-Ohio-7933, ¶ 30.

{¶ 32} A defendant, in order to establish that his attorney provided deficient representation, must "prove that his counsel's performance fell below an objective standard of reasonable representation." (Citations omitted.) *Hartman* at ¶ 30. This objective standard includes a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶ 33} We turn first to Ulm's claim that counsel should have filed a motion to dismiss on speedy trial grounds.   The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio

Constitution. Ohio's speedy trial statute, R.C. 2945.71, implements the constitutional right to a speedy trial and must be strictly enforced. *State v. Pachay*, 64 Ohio St.2d 218, 416 N.E.2d 589 (1980). That statute requires the State to bring a felony defendant to trial within 270 days of arrest. R.C. 2945.71(C). The record demonstrates that Ulm was not arrested on or charged with any state offenses until he was indicted on February 11, 2020. He entered his guilty pleas the following month. Ulm has failed to demonstrate that his statutory speedy trial rights were violated and, as such, there was no ineffective assistance of counsel.

{¶ 34} Ulm also notes he was arrested on federal charges in March 2018. Based upon this, he asserts that his constitutional right to a speedy trial began to run as of that date. Ulm does not cite, and we cannot find, any support for this argument. Further, although Ulm intimates that the federal and state charges were similar, we note that we are permitted to take judicial notice of the public record of Ulm's federal case. *See State ex rel. Dodson v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin No. 21AP-448, 2022-Ohio-2552, ¶ 34. That record indicates that federal authorities charged Ulm with child pornography offenses. Here, the charges were for sexual abuse of minors. Thus, while the cases were arguably related, the federal and state charges were separate and distinct from one another. And there is nothing in this record to indicate that the State was aware of any potential offenses at the time Ulm was arrested in 2018 for the federal charges. Therefore, we find no merit in this argument.

{¶ 35} Ulm further argues that the delay between the commission of the offenses and the indictment in state court violated his speedy trial rights. An unjustified delay

between commission of an offense and an indictment for that offense which results in actual prejudice to the defendant can violate a defendant's right to due process. *State v. Hawkins*, 2d Dist. Montgomery No. 27019, 2018-Ohio-867, ¶ 9. The record does not demonstrate an unjustified delay or that Ulm suffered prejudice as a result of the delay between the commission of the offenses and the indictment.

{¶ 36} Because we find no basis for concluding that Ulm's right to a speedy trial or to due process were violated, we necessarily conclude that counsel was not ineffective for failing to raise these issues.

{¶ 37} We next address Ulm's claim that trial counsel was ineffective because he did not seek a merger of the rape convictions for purposes of sentencing as argued in the third assignment of error. Given our resolution of that argument, we find no basis for a claim of ineffective assistance of counsel in this regard.

{¶ 38} Finally, Ulm contends that counsel was ineffective for failing to "ensure that the record on appeal was complete, i.e. the Federal PSI, Victim Impact Statements, or otherwise." Since the parties entered into an agreed sentence, we cannot discern how the omission of these documents caused Ulm any prejudice.

{¶ 39} Based upon this record, we conclude that Ulm has failed to establish his claim of ineffective assistance of counsel. Accordingly, the fourth assignment of error is overruled.


**V.    Conclusion**

{¶ 40} The first, third, and fourth assignments of error are overruled. The second

assignment of error is sustained. The trial court's judgment is affirmed in part, reversed in part, and remanded to the trial court so that its judgment entry may be amended to reflect that, on the four rape convictions, if Ulm is released from prison, he will be subject to life-time parole supervision.

. . . . . . . . . . . .

WELBAUM, J., concurs.

DONOVAN, J., concurs in part and dissents in part:

{¶ 41} I disagree with the resolution of the first assignment of error. Here, the trial court failed to meet its obligation to advise Ulm "at least of the basic registration requirement before accepting his plea[s]." *State v. Hawkins,* 2d Dist. Greene No. 2012-CA-49, 2013-Ohio-2572, ¶ 9, citing *State v. Bush,* 2d Dist. Greene No. 2010-CA-82, 2011-Ohio-5954, ¶ 20 (Fain, J., concurring). As in *Hawkins*, Ulm was not advised that rape is a Tier III offense, requiring address verification every 90 days for life or that it includes community notification. He was not advised that gross sexual imposition is a Tier II offense requiring semi-annual reporting for 25 years. Ulm merely indicated in response to a single query from the trial judge that he knew he would be given "a registration requirement," and he did not indicate that he discussed any requirements with defense counsel *prior* to entering his pleas. I conclude the singular query by the trial judge was insufficient under *Hawkins* and *Dangler*, and that prejudice need not be established. I would reverse.

Copies sent to:

Mathias H. Heck, Jr.
Elizabeth A. Ellis
Johnna M. Shia
Hon. Robert G. Hanseman