[Cite as *State v. Smith*, 2013-Ohio-232.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 12CA11 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| JOHN J. SMITH, | : | |
| | : | |
| | : | **RELEASED 01/23/13** |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Robert W. Bright, Middleport, Ohio, for appellant.

James E. Schneider, Washington County Prosecuting Attorney, and Alison L. Cauthorn, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for appellee.
_____

Harsha, J.

{¶1}  John Smith appeals his convictions for trafficking in drugs and argues that his guilty plea was not made voluntarily because he did not understand the rights he was waiving.  However, the totality of the circumstances show otherwise.  The record reveals that the trial court accepted Smith's guilty plea after providing him with the necessary information required by Crim.R. 11(C), and after asking him if he understood. Smith answered the trial court's questions appropriately and stated that he understood his rights and was voluntarily willing to waive these rights to plead guilty.   Thus, we conclude that the record shows that Smith made his plea knowingly, intelligently and voluntarily.

{¶2}  He also contends that he was denied the effective assistance counsel because his trial attorney did not sufficiently explain the proceedings; therefore, his plea

was not made knowing and intelligently.  However, the record shows just the opposite.

In several instances Smith initially indicated that he did not understand the court's

questions.  After consulting with his attorney, Smith was able to proceed and stated that

he understood the court's statements.  Smith's statements to the court show that

counsel provided him with an adequate explanation of the proceedings and he now

understood the questions.  Thus we find no merit to this argument.

{¶3}    Finally, Smith claims that the trial court erred by sentencing him to

consecutive prison terms for his convictions because it did not make the findings of fact

required by R.C. 2929.14(E)(4).  However, in *State v. Foster*, 109 Ohio St.3d 1, 2006-

Ohio-856, 845 N.E.2d 470, the Supreme Court of Ohio previously found that statute

unconstitutional and determined that trial courts had full discretion to impose

consecutive sentences.  Because *Foster* was still the law at the time of Smith's

sentencing, the trial court in this case was not required to make any findings before

imposing consecutive sentences.

I. FACTS

{¶4}    This case originates from an incident in which John Smith sold ecstasy

pills and heroin to a confidential informant.  Based on this exchange, Smith was

charged with seven drug-related offenses.  After he filed a motion to plead not guilty by

reason of insanity, the trial court ordered an examination to determine, inter alia, his

competency to stand trial.  After an examination, a clinical and forensic psychologist

determined that Smith was competent.  Following this determination, Smith agreed to

plead guilty to two counts of trafficking in drugs and in exchange the prosecution

dismissed the remaining charges.  The trial court sentenced Smith to 12 months

incarceration on count one and three years incarceration on count two, to be served consecutively.  Smith now appeals his convictions and sentence.

## II. ASSIGNMENTS OF ERROR

{¶5}   Smith raises three assignments of error for our review:

{¶6}   1. "THE TRIAL COURT ERRED IN ACCEPTING THE DEFENDANT/APPELLANT'S GUILTY PLEA DUE TO THE DEFENDANT/APPELLANT'S CLEAR INABILITY TO UNDERSTAND THE LEGAL RIGHTS HE WAS WAIVING WHEN HE PLED GUILTY."

{¶7}   2. "THE ASSISTANCE OF DEFENDANT/APPELLANT'S BY[sic] TRIAL COUNSEL WAS INEFFECTIVE."

{¶8}   3. "THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT/APPELLANT TO CONSECUTIVE TERMS OF IMPRISONMENT."

## III. GUILTY PLEA

{¶9}   In his first assignment of error, Smith contends that he did not enter his guilty plea knowingly, intelligently and voluntarily.

{¶10}   "'When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily.  Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.'" *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, ¶ 9, quoting *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996).  "'In considering whether a guilty plea was entered knowingly, intelligently and voluntarily, an appellate court examines the totality of the circumstances through a de novo review of the record to ensure that the trial court complied with constitutional and

procedural safeguards.'" *State v. Eckler*, 4th Dist. No. 09CA878, 2009-Ohio-7064, ¶ 48, quoting *State v. Jodziewicz*, 4th Dist. No. 98CA667, 1999 WL 266679 (Apr. 16, 1999).

**{¶11}** "Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty or no contest." *State v. Vieney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 8. Before accepting a guilty plea in a felony case, a trial court must address the defendant personally and determine that "the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." Crim.R. 11(C)(2)(a).

**{¶12}** Furthermore, the court must inform the defendant of both the constitutional and nonconstitutional rights he is waiving and determine that he "understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence." Crim.R. 11(C)(2)(b). The court must determine that the defendant understands he "is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." Crim.R. 11(C)(2)(c).

**{¶13}** Smith does not contend that the trial court failed to comply with Crim.R. 11(C) or did not inform him of the rights that he was waiving by pleading guilty. Rather, he claims that he did not understand the consequences of his plea and points to certain statements, which he made at the hearing, that he claims demonstrate his confusion.

He contends that he was incapable of understanding due to his mental state and minimal education. However, we find nothing in the record that indicates his plea was involuntarily.

{¶14} The record establishes that throughout the change of plea hearing Smith consulted with his attorney and asked for clarification on certain issues. Contrary to his claims, this alone does not demonstrate that he did not understand the consequences of his plea. Rather, it shows that his attorney eliminated any confusion he may have had by explaining the court's statements. For example, the record shows the following exchange between the trial court, Smith and his attorney at the change of plea hearing:

> THE COURT: Under both the federal and state Constitution, you have the absolute right to remain silent. You don't have to say anything in this courtroom and you certainly do not have to answer any or all of my questions. You also have Constitutional privileges against self incrimination. You cannot say anything that makes you – you do not have to say anything that makes you look guilty. Now do you understand what I said?

> SMITH'S ATTORNEY: Do you understand what he said about the Fifth Amendment? You don't have to incriminate yourself.

> SMITH: What's that mean?

> SMITH'S ATTORNEY: You don't have to – you don't' have to say anything that would make you look guilty, but obviously, if you're going to enter a plea of guilty, then you're admitting Count 1 and Count 2, and the other ones are going to be dismissed.

> * * *

> (Attorney-client conference.)

> * * *

> THE COURT: Does he want to proceed?

SMITH'S ATTORNEY:  He said he did, Judge.

THE COURT:  Okay.  Do you want to proceed?

SMITH:  Yes.  I just want to get this over with.

{¶15}  Smith points out that during this time the court suggested to his attorney that "we move this to tomorrow or sometime, give you a chance to go over this with him in detail," and stated "I get the sense that this just isn't the day to do this for him.  And I don't want to shove anything down his throat."  However, after making this suggestion Smith consulted with his attorney and then stated that he wanted to proceed with the hearing.  He responded that he understood he had a Constitutional privilege against self incrimination and that he was willing to give up his Constitutional rights, answer the court's questions and tell the truth about his charges.   The record shows:

THE COURT: Okay.  Now, Mr. Smith, you don't have to answer my
               questions.  You've got a Constitutional right to remain silent.
               Do you understand that?

SMITH:  Yes.

THE COURT: Do you understand that anything you do say can be used
               against you?

SMITH:  Yes.

THE COURT:  In this case and in other cases?

SMITH:  Yes.

THE COURT: Okay.  You also have a Constitutional privilege against self
               incrimination.  You don't have to say anything that makes
               you look guilty.  Do you understand that?

SMITH:  Yes.

THE COURT: Okay.  Are you willing to give up your Constitutional rights, answer my questions today, and tell the truth concerning this charge?

SMITH: Yes.

{¶16}  Accordingly, Smith appropriately answered the court's questions and indicated he wanted to proceed with the hearing and plead guilty.  He also indicated he was willing to waive his Constitutional rights.  Thus, it appears that after consulting counsel he was able to proceed with an understanding of the law and its consequences.

{¶17}  Smith also points to the following exchange to support his claim that he did not understand the consequences of his plea:

THE COURT:  Did you hear the questions I asked Attorney Brum a moment ago?

SMITH: Yes, but I don't remember.

THE COURT:  Okay, I asked her, have you fully investigated the facts and the law? Have you determined whether there exists any question? Attorney Brum, have you determined whether there exists any question as to the admissibility of any claimed admissions, confessions, or other evidence under federal or state law and advised Mr. Smith regarding that? Has she done that?

SMITH: Yes.

THE COURT: Then I asked her, has she informed you of the elements of the offenses with which you're charged, of all defenses that may be available to you and of all your Constitutional rights, state and federal. Has she done that?

SMITH: Yes.  What that means, just it's a federal case?

THE COURT:  No.

SMITH'S ATTORNEY:  No.  Remember when we went over these rights, that if you plead guilty, you give up these rights?  I talked to you about the Constitution.

SMITH:  Yeah.

SMITH'S ATTORNEY: Because we're not going to ever have a jury trial. We're not going to confront the witnesses.  That's what he is talking about.

SMITH:  Yes.

SMITH'S ATTORNEY:   Yes.

THE COURT:  Okay.  Now, Mr. Smith, are you willing to give up your Constitutional rights and answer my questions - - I'm going to ask you again - -and tell the truth concerning these two charges in court today?

SMITH: Yes.

{¶18}  Therefore despite Smith's claims, the record reveals that although he may not have initially understood the court's statement concerning his federal Constitutional rights, after an explanation from his attorney, he confirmed that he was willing to waive his Constitutional rights and answer the court's questions.  Nothing in the record shows that his waiver was not made knowingly and intelligently.

{¶19}  The court also asked Smith if he now has or if he ever had "any mental illness, mental condition, or any mental problems?"  Smith responded affirmatively. When asked if this would prevent him "from fully understanding what is happening here in this courtroom today," he responded "I don't know."  His attorney then explained that he was previously diagnosed as bipolar and there was a competency and sanity evaluation performed.  The court confirmed that he was found to be competent and then asked the following questions:

THE COURT:  So, are you able to understand what's happening here today?

SMITH: Yes.

THE COURT: Okay.  Do you have any physical health problems today?

SMITH:  What does physical mean?

THE COURT: Heart condition, broken finger, flu, another other than mental. Sore toe.

SMITH:  Yes, like I be having pains in my heart and like at the bottom right here –

THE COURT: Okay.

SMITH: -- inside of my – like in my ankle.

THE COURT: Okay.  Is there anything in that, that's keeping you from fully understanding what's happening, because of your physical health?

SMITH:  No.

{¶20}  Following this exchange, the court proceeded with the required questioning contained in Crim.R. 11(C)(2).  To each question, Smith answered appropriately and indicated he understood the court's statements, including that his guilty plea was a voluntary and freely made decision.  However, after making these statements the court asked:

THE COURT: No – one did anyone force you or threaten you to get you to plead guilty?

SMITH: Well, when I first brought this case, the police officer told me I – if I was to take it to trial, that he threatened me, saying that I – that I know who which people was going to be on the jury or something.  I didn't know what he was talking about.

THE COURT: Well that, wouldn't happen in this courtroom.  If you want a jury trial, I'll give you a jury trial, and I'll guarantee none of them will know the policeman.

SMITH'S ATTORNEY: John, that – that has nothing to do with – did you – did you hear what Judge said? We --  we talk to the jurors and – and screen them, if they have any interest or bias or if they know the witnesses, so that doesn't happen in a jury trial.  Okay?  It's voir

> dire, where they select the jury. What he's saying is, did anybody for you – Mr. Schneider, myself, Miss German, the CI, nobody has forced you to take this deal, correct?

SMITH: Yes.

SMITH'S ATTORNEY: That's right.

THE COURT: So did anybody force you to plead guilty or threaten you?

SMITH: No.

THE COURT: Is it a voluntary decision on your behalf, is it something that you want to do?

SMITH: Yes.

{¶21} Thus, again the record shows that although Smith initially may not have understood the court's questions, after an explanation from his attorney, he was able to answer appropriately and confirm that his plea was voluntary.

{¶22} In conclusion, considering the court's compliance with Crim.R. 11(C)(2) along with Smith's responses that he understood the court's statements concerning his rights, the totality of the circumstances show that he made his plea knowingly, intelligently and voluntarily. Accordingly, the court did not err by accepting Smith's guilty plea and we overrule his first assignment of error.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

{¶23} Smith also argues that he was denied the effective assistance of counsel because his attorney "did an insufficient job of informing [him] of his rights and of the details concerning the hearing(s) in the case below."

{¶24} To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, that is, performance falling below an objective

standard of reasonable representation; and (2) prejudice, meaning that there is a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 Ohio S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* at 686.

**{¶25}** Although Smith claims his trial counsel did not effectively assist him at the change of plea hearing, the record reveals just the opposite. As we noted above, in several instances Smith initially indicated to the court that he did not understand its questions or gave inappropriate responses. However, after an explanation from his attorney he indicated he understood the court's questions and answered appropriately. This indicates that counsel did just what she was required to do. She sufficiently explained the court proceedings to Smith along with his rights. Smith's changed responses to the court demonstrate this. Accordingly, we find that counsel's performance was not deficient.

**{¶26}** Smith also summarily contends that his counsel was ineffective for not requesting a second competency evaluation and that a second evaluation may have found him incompetent. To support this speculation he cites *State v. Hall*, 6th Dist. No. WD-09-067, 2010-Ohio-4056. In that case the first evaluation found the defendant incompetent. The state asked for a second evaluation with a specific psychologist because his opinion was "much more relevant and credible to [the defendant's] current

condition," and because this psychologist "had longer and closer contact with [defendant] during treatment, and her evaluation did not rely on old, unrelated evaluations." *Id.* at ¶ 5. Nothing in our record indicates that the psychologist's report in this case was unreliable or that Smith would have been better served by an evaluation from a different professional. Mere speculation will not support a claim of ineffective assistance of counsel in a direct appeal in the absence of some evidence of prejudice. Therefore, he was not prejudiced by counsel's failure to request a second evaluation and we find his argument to be meritless. For these reasons we conclude that Smith was not denied the effective assistance of counsel and overrule his second assignment of error.

## V. SMITH'S CONSECUTIVE SENTENCE

{¶27} Finally, in his third assignment of error Smith claims the trial court erred by sentencing him to consecutive terms of imprisonment for his convictions without making the findings required by R.C. 2929.14(E)(4).

{¶28} R.C. 2929.41(A), the law regarding consecutive sentencing, previously stated: "Except as provided in division (B) of this section, division (E) of section 2929.14, or division (D) or (E) of section 2971.03 of the Revised Code, a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term." R.C. 2929.14(E)(4) then previously allowed a court to impose consecutive sentences when it made the necessary findings. However, in *Foster*, the Supreme Court of Ohio declared R.C. 2929.41(A) and R.C. 2929.14(E)(4) unconstitutional and severed them from the statutes. *Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at paragraphs three and four of the syllabus. The Court held that because no

statute remained the "common-law presumptions [were] reinstated." *State v. Bates*, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, ¶ 18. Thus, trial courts were left with full discretion to determine whether a prison sentence would run consecutively to any other term of imprisonment. *Id.* at paragraph seven of the syllabus.

{¶29} However, the General Assembly recently enacted Am.Sub.H.B. 86 and revived the judicial fact finding found unconstitutional in *Foster*. Nevertheless, H.B. 86 did not take effect until September 30, 2011, and therefore did not apply to Smith who was sentenced on August 2, 2011. Thus, at the time of Smith's sentencing the law as announced in *Foster* was controlling, and the trial court had "full discretion to impose a prison sentence within the statutory range and [was] no longer required to make findings or give [its] reasons for imposing maximum, consecutive, or more than minimum sentences." *Foster* at paragraph seven of the syllabus. Therefore, the trial court was not required to make any findings before sentencing Smith to a consecutive sentence. Accordingly we overrule his third assignment of error.

JUDGMENT AFFIRMED.

### JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

McFarland, P.J. & Abele, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
William H. Harsha, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**