[Cite as *State v. Carpenter*, 2023-Ohio-2838.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 22CA24 |
| | : | |
| v. | : | |
| | : | DECISION AND JUDGMENT |
| JACOB L. CARPENTER, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | **RELEASED 8/07/2023** |

APPEARANCES:

Brian T. Goldberg, Cincinnati, Ohio, for Appellant.

Nicole Tipton Coil, Washington County Prosecuting Attorney, Marietta, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} Jacob L. Carpenter appeals the November 22, 2022 sentencing entry of the Washington County Court of Common Pleas. Carpenter asserts a sole assignment of error regarding the trial court's acceptance of his guilty plea. Carpenter argues that his plea was not knowingly made because although the trial court informed him that as a consequence of his plea he would be classified as a Tier I sex offender, the trial court failed to inform him of the specific duties which would follow as a result of that sex offender classification. However, based on our review of the current Ohio law and

the facts of this case, we find no merit to the assignment of error.

Accordingly, we affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} Appellee State of Ohio incorporates by reference the Statement of the Case and the Statement of Facts set forth within Carpenter's appellate brief, with three exceptions which will be set forth below.  On March 22, 2022, Carpenter was indicted in a four-count indictment.  Count One alleged attempted unlawful sexual conduct with a minor in violation of R.C. 2907.04(A)/R.C. 2907.04(B)(3)/R.C. 2923.02(A)/R.C. 2903.02(E)(1), a felony of the fourth degree.  He was also charged in Count Two with importuning, in violation of R.C. 2907.07(D)(2)/R.C. 2907.07(F)(3), a felony of the fifth degree.  Count Three alleged possession of criminal tools in violation of R.C. 2923.24(A)/R.C. 2923.24(C), a felony of the fifth degree.  Count Four alleged tampering with evidence in violation of R.C. 2921.12(A)(1)/R.C. 2921.12(B), a felony of the third degree.

{¶3} The indictment stemmed from cell phone communications between Carpenter and C.D.R., a thirteen-year-old female.  On August 26, 2021, Carpenter began sending text messages to C.D.R.'s phone.  Later in the day, C.D.R.'s mother discovered the messages, sexual in nature, on her

daughter's phone and began, herself, returning Carpenter's messages. C.D.R.'s mother thereafter contacted the Marietta Police Department.

{¶4} A detective from the police department began using C.D.R.'s cell phone and continued messaging with Carpenter.  At some point during the text communication between the detective and Carpenter, Carpenter solicited the detective for sexual activity while apparently still believing that he was texting with C.D.R.

{¶5} After  Carpenter's arraignment and the criminal proceedings ensued, Carpenter eventually opted for a jury trial which began on November 8, 2022.  During trial on November 10, 2022, Carpenter entered a plea of guilty to Count Two, importuning.  The remaining counts were dismissed pursuant to a plea agreement.

{¶6} On November 21, 2022, Carpenter was sentenced to five years of community control and ordered to serve 120 days in the Washington County Jail.  He was also classified as a Tier I Sex Offender.  This timely appeal followed.

{¶7} Additionally, Appellee notes that Carpenter requested the trial be stopped so that he could enter into the plea agreement and plead guilty. Appellee points out that neither Carpenter nor his counsel asked any questions, made any comments, or interposed any objection about the trial

court's brief statement during the plea hearing that, as part of sentencing later to be imposed, Carpenter would be classified as a Tier I sex offender. Likewise, both Carpenter and his attorney remained silent at sentencing when the trial court fully explained all the registration requirements.

## ASSIGNMENT OF ERROR

I.     THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. CARPENTER BY ACCEPTING HIS GUILTY PLEA WHEN THE COURT FAILED TO DETERMINE THAT HE UNDERSTOOD THE MAXIMUM PENALTIES INVOLVED.

### A. STANDARD OF REVIEW

{¶8} Carpenter challenges the knowing, intelligent, and voluntary nature of his plea to Count Two, importuning. Crim.R. 11(C)(2) governs the acceptance of guilty pleas by the trial court in felony cases and provides that a trial court should not accept a guilty plea without first addressing the defendant personally and:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is

waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶9} "Thus, prior to accepting a guilty plea, a 'court must inform the defendant that he is waiving his privilege against compulsory self-incrimination, his right to jury trial, his right to confront his accusers, and his right of compulsory process of witnesses.' " *State v. Tolle*, 2022-Ohio-2839, 194 N.E.3d 410, at ¶ 9 (4th Dist.), quoting, *State v. Ballard,* 66 Ohio St.2d 473, 423 N.E.2d 115, paragraph one of the syllabus (1981). *See also* Crim.R. 11(C)(2)(c). "In addition to these constitutional rights, the trial court must determine that the defendant understands the nature of the charge, the maximum penalty involved, and the effect of the plea." *State v. Montgomery,* 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 41.

{¶10} When reviewing a defendant's constitutional rights (right to a jury trial, right to call witnesses, etc.), a trial court must strictly comply with Crim.R. 11(C)(2)(c). *Tolle, supra, at ¶10; State v. Veney,* 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18. In contrast, when reviewing a defendant's non-constitutional rights (maximum penalty involved, understanding effect of plea, etc.), a trial court must substantially comply with Crim.R. 11(C)(2)(a) and (b). *Tolle* at ¶ 11*; State v. Veney,* supra, ¶ 18.

" '[S]ubstantial compliance' means that 'under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving.' " *State v. Morrison,* 4th Dist. Adams No. 07CA854, 2008-Ohio-4913, at ¶ 9, quoting *State v. Puckett,* 4th Dist. Scioto No. 3CA2920, 2005-Ohio-1640, at ¶ 10, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977); *State v. Carter*, 60 Ohio St.2d 34, 396 N.E.2d 757 (1979).

{¶11} In *Veney*, the Court held as follows regarding the acceptance of guilty pleas:

> "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *Veney,* supra, at ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996); *State v. Montgomery,* supra, at ¶ 40; *State v. Barker,* 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, ¶ 9.

*See Tolle,* at ¶ 12. " 'It is the trial court's duty, therefore, to ensure that a defendant "has a full understanding of what the plea connotes and of its consequence." ' " *Tolle,* at ¶ 13; quoting *Montgomery* at ¶ 40, quoting *Boykin v. Alabama,* 395 U.S. 238, 244, 89 S.Ct. 1709 (1969); *State v. Conley,* 4th Dist. Adams No. 19CA1091, 2019-Ohio-4172, at ¶ 34.

{¶12 } When appellate courts evaluate whether a defendant knowingly, intelligently, and voluntarily entered a guilty plea, a court must independently review the record to ensure that the trial court complied with the Crim.R. 11 constitutional and procedural safeguards. *See Tolle*, at ¶ 14; *State v. Leonhart*, 4th Dist. Washington No. 13CA38, 2014-Ohio-5601, at ¶ 36; *State v. Eckler,* 4th Dist. Adams No. 09CA878, 2009-Ohio-7064, at ¶ 48; *Veney*, supra, at ¶ 13 ("Before accepting a guilty or no-contest plea, the court must make the determinations and give the warnings required by Crim.R. 11(C)(2)(a) and (b) and notify the defendant of the constitutional rights listed in Crim.R. 11(C)(2)(c)."); *State v. Kelley,* 57 Ohio St.3d 127, 128, 566 N.E.2d 658 (1991) ("When a trial court or appellate court is reviewing a plea submitted by a defendant, its focus should be on whether the dictates of Crim.R. 11 have been followed."); *See also State v. Shifflet*, 2015-Ohio-4250, 44 N.E.3d 966 (4th Dist.), ¶ 13, citing *State v. Smith,* 4th Dist. Washington No. 12CA11, 2013-Ohio-232, at ¶ 10.

{¶13} "The purpose of Crim.R. 11(C) is 'to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty.' " *Tolle*, at ¶ 15, quoting *Ballard, supra*, at 479-480, 423 N.E.2d 115. As stated above, although literal compliance with Crim.R. 11(C) is preferred, it is not required. *State v. Clark*, 119 Ohio St.3d

239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29, citing *State v. Griggs, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51,* ¶ 19. Therefore, an appellate court will ordinarily affirm a trial court's acceptance of a guilty plea if the record reveals that the trial court engaged in a meaningful dialogue with the defendant and explained "in a manner reasonably intelligible to that defendant" the consequences of pleading guilty. *Ballard* at paragraph two of the syllabus; *Barker* at ¶ 14; *Veney* at ¶ 27; *Conley* at ¶ 37.

{¶14} Additionally, it has been held that a defendant who seeks to invalidate a plea on the basis that the trial court partially, but not fully, informed the defendant of his or her non-constitutional rights must demonstrate a prejudicial effect. *See Tolle* at ¶ 16*; Veney* at ¶ 17; *Clark* at ¶ 31. To demonstrate that a defendant suffered prejudice due to the failure to fully inform the defendant of his or her non-constitutional rights, the defendant must establish that, but for the trial court's failure, a guilty plea would not have been entered. *See Clark* at ¶ 32, citing *State v. Nero, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990)*(stating that "[t]he test is 'whether the plea would have otherwise been made' "). However, when a trial court completely fails to inform a defendant of his or her non-constitutional rights, the plea must be vacated, and no analysis of prejudice

is required.  *See Clark* at ¶ 32, citing *State v. Sarkozy,* 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22.

## B.  LEGAL ANALYSIS

{¶15} R.C. Chapter 2950 "Sex Offenders" sets forth the classification of sex offenders into Tiers I, II, and III, dependent upon the type of offense committed, age of victim, and other factors to be taken into consideration when sentencing an individual convicted of a sex offense.  The Ohio Supreme Court has held that the Adam Walsh Act version of R.C. Chapter 2950 is punitive, not remedial.  Thus, the registration and other requirements imposed upon a sexual offender are a component of the offender's maximum penalty.  *See State v. Dangler,* 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286; *State v. Williams,* 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 16.

{¶16} Carpenter contends that the trial court erred by failing to advise him, prior to entering his plea of guilty, of the maximum penalty with regard to his sex offender classification.  Carpenter argues he was given minimal notifications about his duty to register as a Tier I sex offender because:  (1) he was not informed that his registration would be for fifteen years; (2) he was not made aware of the consequences of failing to register; and (3) he was not advised that he would have certain residency restrictions consistent

with R.C. 2950.034(A). Thereby, Carpenter asserts that the trial court completely failed to explain to him the required duties of a Tier I sex offender before he entered his plea. Thus, Carpenter urges us to conclude that his plea was not entered knowingly and must be vacated.

{¶17} As discussed above, explanation of a defendant's maximum sentence falls into the category of non-constitutional rights. We begin our analysis by examining, in pertinent part, the plea colloquy between Carpenter and the trial court. The plea colloquy began as follows:

> The Court: Okay. And then the Court has been presented with that written guilty plea by the defendant. Is that correct Attorney Smith?
>
> Mr. Smith: Yes, Judge.
>
> The Court: And that's your signature on the document?
>
> Mr. Smith: It is.
>
> The Court: And did you go over the guilty plea and answer all of your client's questions?
>
> Mr. Smith: I did.

\* \* \*

> The Court: And then, Mr. Carpenter, is it your intention, then, to enter a guilty plea to Count 2, importuning?
>
> Defendant: Yes.

\* \* \*

| | |
|---|---|
| The Court: | And you can read and write? |
| Defendant: | Yes. |
| The Court: | Did you read the written guilty plea? |
| Defendant: | Yes. |
| The Court: | Have you had the opportunity to review the written plea with your attorney? |
| Defendant: | Yes. |
| The Court: | Did your attorney answer any questions or concerns you may have had? |
| Defendant: | Yes. |

{¶18} At this point, the trial court discussed Carpenter's constitutional rights, to which Carpenter responded that he did understand. The colloquy continued:

| | |
|---|---|
| The Court: | All right. And do you understand the nature of the charge you're pleading guilty to, importuning? |
| Defendant: | Yes. |
| The Court: | And do you understand the maximum possible prison term is 12 months? |
| Defendant: | Yes. |

{¶19} Next, the trial court explained the components of post-release control, and again, Carpenter acknowledged understanding these provisions. The colloquy continued as follows:

The Court: And do you understand that by signing the guilty plea, you've admitted guilt, you've waived the Constitutional rights explained during the guilty plea, and when the Court accepts the plea, you'll be found guilty of a felony, and the Court will then proceed with judgment as well as sentencing?

Defendant: Yes.

The Court: And do you understand that part of sentencing is, you're going to be a Tier I sex offender?

Defendant: Yes.

The Court: Okay. And are you doing this today voluntarily, of your own free will?

Defendant: Yes.

The Court: And my understanding, there is a plea agreement, which is written in the change of plea form. It says you'll plead to Count 2. The State's going to dismiss Counts 1, 3, and 4. You'll forfeit the Samsung cell phone. You'll receive five years community control and [be] sentenced to 120 days incarceration and then you'll be a Tier I sex offender. Is that the State's understanding of the complete agreement?

Ms. Coil: Yes, Your Honor. Yes.

The Court: Attorney Smith, is that your understanding?

Mr. Smith: It is, Judge.

The Court: Is that your understanding of the agreement you've reached with the State, Mr. Carpenter?

Defendant: Yes, Your Honor.

| | |
|---|---|
| The Court: | Have any threats or promises or inducements been made to you, to get you to plead guilty, that we've just discussed here? |
| Defendant: | No. |

* * *

| | |
|---|---|
| The Court: | And Mr. Carpenter, did you hear the agreement? |
| Defendant: | Yes. |
| The Court: | Is that the complete agreement you've reached with the State to resolve your case? |
| Defendant: | Yes, Your Honor. |

{¶20} At this point, the prosecutor recited the underlying facts

supporting Carpenter's conviction.  The trial court inquired:

| | |
|---|---|
| The Court: | And then, Attorney Smith, is that your understanding of the facts? |
| Mr. Smith: | Yes, yes, Judge. |
| The Court: | All right.  And the, Mr. Carpenter, did you hear what the Prosecutor said? |
| Defendant: | Yes, Your Honor. |
| The Court: | Is that the truth? |
| Defendant: | Yes. |
| The Court: | All right.  Now, I'm about to accept your plea of guilty, and when I do, it would be difficult to withdraw it.  But you can tell me right now, do you want to continue the jury trial that's in your case? Do you want to waive your right to have a jury and |

have the Court decide your case and have a court trial?  Or do you want me to accept your guilty plea?

Defendant:            I want you to accept the guilty plea.

\* \* \*

The Court:            So the Court finds today, Defendant in open court was advised of all Constitutional rights,  made a knowing, intelligent, and voluntary waiver of those rights, pursuant to Criminal Rule 11 and 7. The plea is accepted  and ordered filed.  The Court does find Defendant guilty of Count 2, importuning, a felony of the fifth degree.

{¶21} At this point, the parties agreed to continue the matter for sentencing.  At sentencing on November 21, 2022, after the trial court imposed the agreed sentence of community control, explained post-release control, and explained that Carpenter would forfeit his cell phone, the trial court turned to the matter of the sex offender classification as follows:

The Court:            The Court further finds that pursuant to Revised Code Section 2950.01,[as a] result of these convictions, you are a Tier I sex offender.  So next I have to go over the explanation of duties to register as a sex offender.

{¶22} The trial court then proceeded to explain the detailed registration requirements and the consequences of failing to abide by them, an explanation that encompassed nearly five full pages of the hearing transcript.  The trial court also inquired whether Carpenter understood the

requirements of his Tier I status.  Carpenter acknowledged twice that he did understand his duties.

{¶23} Both parties have directed us to *State v. Dangler,* 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, wherein the Supreme Court of Ohio was confronted with an argument that a "plea was invalid because the trial court failed to comply fully with Crim.R. 11(C)(2)(a)'s requirement that the court explain the 'maximum penalty' for the offense (sex offender registration requirements) at the time the court accepted the plea."  *Id*. at ¶ 1. Dangler argued that although the trial court informed him he would have to register as Tier III sex offender for the rest of his life, it erred in failing to "more fully explain the restrictions and obligations that went along with his status as a sex offender."  *Id*.  Dangler further argued that the failure by the trial court gave "him an automatic right to withdraw his plea, without any need to demonstrate prejudice."  *Id*.

{¶24} The Supreme Court rejected Dangler's argument, holding that when a trial court has informed a defendant that he or she is subject to the "sex-offender-registration scheme," the defendant is only entitled to have his conviction vacated for lack of a more complete explanation if he demonstrates prejudice.  *Id*. at ¶ 2.  In other words, the Court held that Dangler had to demonstrate "that he would not have entered the plea but for

the incomplete explanation[ ]" and that Dangler was not entitled to withdraw his plea because he had not demonstrated prejudice. *Id*. Thus, *Dangler* essentially reiterated the "traditional rule" which states that "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id*. at ¶ 16, citing *State v. Nero,* supra, at 108, 564 N.E.2d 474.

{¶25} In *Tolle, supra*, at ¶ 21, we observed that, as discussed in *Dangler* at length, there are exceptions to the traditional rule that relieve defendants from the requirement of demonstrating prejudice. *See Dangler* at ¶¶ 14-17. For example, if a trial court fails to strictly comply, and instead only substantially complies with the Crim.R. 11(C)(2)(c) constitutional notifications, no prejudice must be shown. *Id*. at ¶ 14. Further, "a trial court's complete failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice." *Id.* at ¶ 15, citing *State v. Sarkozy, supra*, at ¶ 22. Thus, a defendant must show prejudice if the trial court fails to substantially comply with the non-constitutional notifications

contained in Crim.R. 11(C)(2)(a) and (b) but is not required to demonstrate prejudice if the trial court completely fails to comply.[1]

> [T]he *Dangler* Court summarized as follows:
>
> Properly understood, the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of the type that excuses a defendant from the burden of demonstrating prejudice? And (3) if a showing of prejudice is required, has the defendant met that burden?

*Dangler* at ¶ 17. *See also Tolle, supra.*

{¶26} Appellee has directed us to *State v. Ulm,* 2022-Ohio-4147, 205 N.E.3d 19 (2d Dist.). Ulm entered into a plea agreement in exchange for an agreed-upon sentence. The trial court conducted the plea hearing and the sentencing hearing followed immediately. On that date, Ulm signed a plea and waiver form, and two forms which set forth an explanation of his duties to register as a Tier II and Tier III sex offender. At the outset of the plea hearing, defense counsel noted that Ulm was present to do the plea, the sex offender designation, and to proceed to sentencing. Counsel also affirmed Ulm had executed the offender registration notification forms. However, the only mention of the sex offender registration was during the plea colloquy

---

[1] While Tolle appealed the voluntary nature of his plea, he was erroneously advised regarding his appellate rights. Tolle's case did not involve sex offenses or the sexual offender classification scheme.

when the trial court inquired:  "[and] you understand that you're going to be given a registration requirement?"  Ulm acknowledged his understanding.

{¶27} On appeal, Ulm asserted that the trial court completely failed to comply with Crim.R. 11 as pertained to his designation and registration requirements prior to accepting his plea.  He also asserted that the forms did not substitute for the court's obligation to personally address him prior to accepting his pleas and therefore, there was not substantial compliance.  The appellate court acknowledged that *Dangler* is dispositive.

{¶28} The *Ulm* court concluded that because the transcript revealed he had signed the notification forms and acknowledged his understanding during the plea hearing, the trial court partially complied.  The court noted that the issue was whether there was "some compliance" and not the "degree of such partial compliance."  *Id* at ¶ 14.  The court also noted that Ulm did not assert, and the record on its face did not reflect, that Ulm's plea decision would have been different if he had been provided a complete explanation of the R.C. Chapter 2950 requirements.[2]

{¶29} In *State v. Obhof,* 11th Dist. Ashtabula No. 2021-A-0021, 2023-Ohio-408, the trial engaged in the Crim R. 11 colloquy and then asked

---

[2] Carpenter correctly points out a distinction in his case.  While Carpenter also signed notification forms, the date on the forms reflects the sentencing date, not the plea date.  Nothing in the transcript at the plea hearing indicates the trial court discussed these forms with Carpenter prior to his plea.

the prosecutor if there was anything further to review with Obhof. The

prosecutor stated: "Your Honor, perhaps, just his sex offender registration

requirements * * *." The trial court responded as follows:

> Alright, well, yeah, with regard to that, I think that that's
> something that I'm going to address in connection with the
> sentencing. But if we covered his rights, and I've gone
> through the checklist that I have, so hopefully I haven't
> missed anything that's important.

{¶30} Neither Obhof nor his counsel asked any questions or made any

comment about this statement. At no point prior to Obhof's entering his

plea did the trial court reference the registration requirements. Also, the

signed plea agreement did not reference Obhof's sex offender registration

requirements. The trial court immediately proceeded to sentencing and only

then explained to Obhof the full requirements of being classified as a Tier III

sex offender. Again, neither Obhof or his attorney commented or inquired

further.

{¶31} The appellate court applied the *Dangler* analysis and concluded

that the trial court did partially comply and that Obhof had not demonstrated

any prejudice. The court observed: " 'A complete failure to comply' with a

non-constitutional requirement of Crim.R. 11 occurs when the court makes

'no mention' of the requirement." *Id, supra*, at ¶ 26, quoting *Dangler*, at ¶

15, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d

1224 (In case involving complete failure to mention post-release control).

The *Obhof* court reasoned that although the trial court's explanation fell

short "as a whole," the court did tell Obhof that there were sex offender

registration requirements which it would fully explain at sentencing.

Therefore, Obhof was at least aware that registration requirements were part

of the maximum penalty involved prior to entering his plea. Neither he nor

his counsel objected or sought further information at that time. And, nothing

in the record demonstrated that Obhof would not have entered his plea but

for the court's failure to explain the sex-offender-classification scheme more

thoroughly.

{¶32} In *State v. Fisher*, 8th Dist. Cuyahoga No. 109276, 2021-Ohio-

1592, the trial court explained at the plea hearing only that Fisher was being

classified as a Tier III sex offender and that the specific requirements would

be further discussed at sentencing. This general explanation is similar to the

one given to Carpenter. On appeal of the intelligent, knowing, and voluntary

nature of Fisher's plea, the *Fisher* court also discussed the Supreme Court's

analysis in *Dangler*. The *Fisher* court reasoned:

> The failure to provide a detailed breakdown of all
> registration requirements does not constitute the complete
> failure to advise the offender; consequently, in this setting,
> a defendant seeking to vacate a guilty plea must
> demonstrate prejudice. Advising the offender of the tier
> classification system suffices to trigger the requirement

> that the defendant show prejudice. The sole purpose of the
> prejudice requirement is to avoid the squandering of
> judicial and taxpayer resources by overturning guilty pleas
> the offender has no desire to abandon.

*See also State v. Griffin,* 2020-Ohio-6830, 164 N.E.3d 1032, at ¶ 13, (7th Dist.) (Because the statutory sex offender scheme as a whole is considered punitive, and each separate aspect of the scheme is not a discrete criminal "penalty" for purposes of Crim.R. 11(C)(2)(a), a trial court does not "completely fail" to comply with its duty on this type of maximum penalty by failing to individually review each sex offender obligation. (Internal citations omitted.) *See also State v. Anderson,* 6th Dist. Lucas No. L-18-1110, 2021-Ohio-22.[3]

{¶33} Applying *Dangler* to the underlying facts herein, we cannot say that the trial court completely failed to advise Carpenter as required by Crim.R. 11(C) despite not reviewing the specific duties Carpenter would be subject to as a classified Tier I sex offender. The transcript shows that the trial court advised Carpenter twice at his plea hearing that he would be classified as a Tier I sex offender. After both times, the trial court paused and asked Carpenter whether he or his counsel had questions and asked

---

[3] In *Anderson*, a case remanded for application of *Dangler*, the 6th District found that in light of the significant reduction in sentence by entering a plea to a reduced charge (instead of rape, and having the benefit of a jointly-recommended sentence of three years) there was nothing in the record to support Anderson's claim that he would not have entered his plea if he had known of two additional requirements of his Tier III sex-offender classification and thus did not establish prejudice. The appellate court concluded Anderson was not entitled to have his plea vacated.

Carpenter if he understood the plea agreement. Carpenter neither asked for clarification nor interposed objection. The trial court also emphasized twice that Carpenter was entering a plea and would next proceed to sentence.

{¶34} When a trial court has informed a defendant that he is subject to the sex offender registration, the defendant is only entitled to vacate his plea for lack of a more complete explanation if prejudice is shown. In his appellate brief, Carpenter, without arguing prejudice, asserts that "telling a person unfamiliar with the court system that he will be a Tier I sex offender means nothing to that person." If true in Carpenter's case, that is exactly why it behooves a person considering entering a plea to ask questions when given the opportunity to, or to ask his attorney to request further clarification from the trial court.[4]

{¶35} If a showing of prejudice was required, Carpenter would not be able to satisfy his burden. Carpenter was indicted on four counts. Count One, unlawful sexual conduct with a minor, is a fourth-degree felony with a definite prison term of six to eighteen months. Counts Two and Three, importuning and possessing criminal tools, both carried definite prison terms

---

[4] While it would have been several months before the plea hearing, we do observe that at arraignment on March 4, 2022, Carpenter's initial trial counsel waived formal service, reading, and defects in the indictment, as well as explanation of the penalties associated with the charges. Counsel affirmatively stated on the record: "I have advised him of registration duties pursuant to Counts 1 and 2, as well as the maximum possible penalties on all four counts." Certainly this does not in any way alleviate the trial court of its notification duties but it does belie Carpenter's assertion that he had no knowledge of requirements associated with being classified as a Tier I sex offender.

of twelve months.  Count Four, tampering with evidence, a felony of the third degree, carried a definite prison term of 9 to 36 months.  If convicted on each count, consecutive sentences could have been imposed.  The plea agreement allowing Carpenter to plead to only one of the counts and receive a community control sanction, with 12 months reserved and 120 days jail, and forfeiture of his cell phone, was a very favorable agreement. Carpenter's jury trial had been commenced and the State had introduced considerable credible testimony and documentary evidence.  It is not reasonable to believe that Carpenter would not have entered the plea agreement if he had known of the specific requirements of Tier I sex offender classification.[5]

{¶36} Here, at the plea hearing the trial court notified Carpenter that he would be classified as a Tier I sex offender and he would further explain the significance of that designation at the sentencing hearing.  The trial court substantially complied with its duty under Crim.R. 11(C) to notify Carpenter of a non-constitutional right, his maximum sentence which included a Tier I sex offender classification and resulting consequences.  Carpenter has not established prejudice and none can be found on this record.  Based on the

---

[5] Several appellate courts have emphasized a "best-practices" approach would be to include a more thorough advisement in all cases during the plea colloquy.  *See Obhoff,* supra, at ¶ 11("As in *Dangler,* we 'encourage trial courts to be thorough in reviewing consequences of a defendant's decision to enter a plea, including those stemming from classification as a sex offender:  the duty to register and provide in-person verification, the community-notification provisions, and the residence restrictions.' "); *State v. Stennett,* 2022-Ohio-4645, 204 N.E.3d 691, at ¶ 22 (8th Dist.); *State v. Griffin,* 2020-Ohio-6830, 164 N.E.3d 1032, at ¶ 23 (7th Dist.).

foregoing, we find no basis for vacating Carpenter's plea and no merit to

Carpenter's sole assignment of error challenging the intelligent, knowing,

and voluntary nature of his plea.  The judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

# JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Wilkin, J. concur in Judgment and Opinion.

> For the Court,
>
> _____
> Jason P. Smith
> Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**